# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**JOSHUA PAGE**                                                                          **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 3:22-cv-142-BJB**

**DWAYNE CLARK**                                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Joshua Page, a pretrial detainee at the Louisville Metro Department of Corrections (LMDC), brought this 42 U.S.C. § 1983 lawsuit.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, the Court dismisses Plaintiff's claims but allows him the opportunity, within 30 days, to file an amended complaint that satisfies the pleading requirements of § 1915A.

## I. STATEMENT OF CLAIMS

Plaintiff sues LMDC Director Dwayne Clark in his individual and official capacities.  He asserts that Director Clark "and his administration staff employees" housed him in an unsanitary dorm that was overcrowded with sick inmates in September 2021, putting him at risk for contracting Covid-19, and that he contracted Covid as a result.  DN 1, p. 4.  This violated his Fourteenth Amendment rights, he maintains, based on deliberate indifference to his safety and health.  *Id*.

Plaintiff also alleges that the walls are moldy and the sinks are dirty.  He asked "multiple officers on first shift for some chemicals to clean our dorm," but the officers responded in an "unprofessional" manner, "telling the dorm that it will get pas[sed] out this week with a[n] aggressive attitude for no reason."  *Id*. at 4-5.

Plaintiff requests punitive damages and for "chemicals" to be passed "out daily so we can clean." *Id*. at 5-6.

Plaintiff attaches a copy of a grievance form regarding his requests for cleaning supplies. The grievance, which is dated March 8, 2022, asks for cleaning chemicals to be distributed daily. DN 1-1.

## II. STANDARD OF REVIEW

When a prisoner sues a governmental entity, officer, or employee, a federal district court must review the complaint and dismiss the case if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When screening the complaint, the Court must construe it in the light most favorable to the plaintiff and accept well-pled allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quotation omitted). And while a reviewing court liberally construes *pro se* pleadings, *see id.* at 471; *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

### A. Deliberate indifference to safety

Plaintiff alleges that Defendant Clark was deliberately indifferent to his safety and health when he housed him in an unsanitary dorm overcrowded with sick inmates in September 2021, putting him at risk for contracting Covid-19—which he says he ultimately contracted. He also alleges that "multiple officers on first shift" denied his requests for cleaning chemicals, which concerned him given the moldy condition of the walls and dirty condition of the sinks.

*1. Individual-capacity claim*

The Supreme Court has construed the Fourteenth Amendment's Due Process Clause to proscribe state officials and employees from acting with deliberate indifference to the health and safety of incarcerated individuals. Determining whether actions were deliberately indifferent involves an objective inquiry into whether an official "acted deliberately (not accidentally) and 'recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)). "This reckless-disregard standard is . . . higher than negligence, but lower than criminal recklessness; like civil recklessness, the official doesn't have to actually be aware of the harm." *Brown v. Clark*, No. 3:22-CV-21, 2022 WL 3355805, at *2 (W.D. Ky. Aug. 12, 2022) (citing *Westmoreland*, 29 F.4th at 728).

Plaintiff indicates that the alleged actions or inactions began in September 2021, and that on March 8, 2022 he filed a grievance related to the lack of cleaning chemicals. By that point, Covid was a risk that was or should have been known to prison officials. *See Brown*, 2022 WL 3355805, at *2-3. So the only question at this stage is whether the pleadings plausibly allege that officials responded to the risk in a reckless rather than a reasonable manner. Officials may have acted reasonably even if the harm later materializes. *Id*. at *3 (citing *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020)).

Despite the liberal reading the Court offers the complaint, its undeveloped assertions of overcrowding and unsanitary conditions would not (even if proven true) sustain a Fourteenth Amendment claim. Unlike other complaints that have passed § 1915A screening, Plaintiff doesn't allege that Clark took *no* Covid safety measures. *Compare Berjano v. Shepherd*, 2021

3

WL 1400708, at *2 (D. Az. Apr. 14, 2021) (allegation that prison took no precautions to prevent spread of Covid), *with Barnett v. Gastelo*, No. 2:22-cv-4070, 2022 WL 4292344, at *5 (C.D. Cal. Aug. 22, 2022) (prison's "inability to follow all applicable" Covid precautions "does not show … deliberate indifference so long as [the prison] staff instituted reasonable measures"). The Supreme Court has generally frowned on overcrowding claims outside the Covid context. *See Rhodes v. Chapman*, 452 U.S. 337, 343–47 (1981); *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation" unless it results in "an unconstitutional denial" of basic needs...."). So the mere existence of an overcrowded dorm, standing alone, would not satisfy the deliberate-indifference test.

And nothing in the complaint goes beyond that; it doesn't allege that Clark deliberately or recklessly declined to use extra space or separation available to the prison in disregard of the inmates' health risks (whether general to the population or specific to Plaintiff). Missing is any allegation that Clark caused the overcrowded conditions. Like other failed theories of liability premised on the lack of social distancing in prison, the "complaint does not allege, for example, that [the facility] had enough physical space to implement [further] social distancing" yet Clark "deliberately chose not to use that space." *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021); *see also Brown*, 2022 WL 3355805, at *5. The Constitution gives prisons wide latitude to address challenges such as Covid, even if their choices aren't the ones Plaintiff or even a given judge would consider the most effective. *See Wilson*, 961 F. 3d at 840, 844.

Nor are Plaintiff's cursory claims concerning the general conditions of his incarceration—including moldy walls and dirty sinks—sufficient to establish a Fourteenth Amendment violation. In addition to deliberate indifference, the Constitution protects against

4

"extreme deprivations" of humane incarceration conditions. *Agramonte*, 491 F. App'x at 559–60.  The Fourteenth and Eighth Amendments establish virtually the same standards regarding a challenge to the conditions of confinement.  *See Ellis v. Pierce Cnty.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("no practical difference" between Eighth and Fourteenth Amendment standards in challenges to conditions of confinement); *Schoelch v. Mitchell*, 625 F.3d 1041, 1046–47 (8th Cir. 2010) (applying "extreme deprivation" standard under Fourteenth Amendment).  And under that standard, "[h]arsh and uncomfortable prison conditions do not automatically create an [constitutional] violation.... Rather, 'extreme deprivations' must be alleged." *Agramonte*, 491 F. App'x at 559–60 (6th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  Plaintiff fails to claim that Clark has "deprive[d]" him "of the minimal civilized measure of life's necessities," which include sanitation and medical care.  *Id.* at 559–60 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Farmer v. Brennan*, 511 U.S. 825, 832 (1970).  As this Court has held in related contexts, the lack of an allegation "that the presence of mold in his cell caused him a health problem or created a substantial risk to his health," means "this claim must be dismissed for failure to state a claim upon which relief may be granted." *Brown v. Penick, Todd Cnty. Det. Ctr.*, No. 1:22-cv-P99-GNS, 2022 WL 16702802, at *7 (W.D. Ky. Nov. 3, 2022).[1]

Even accepting Plaintiff's allegations of moldy walls and dirty sinks as true, therefore, the Complaint doesn't state a plausible claim that Clark caused the conditions of confinement to

---

[1] *See also McIntyre v. Phillips*, No. 1:07-CV-527, 2007 WL 2986470, at *3 (W.D. Mich. Sept. 10, 2007) ("[S]ome exposure to black mold is a risk that society has chosen to tolerate.") (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006); *Board v. Farnham*, 394 F.3d 469, at 486 (7th Cir. 2005)); *Jackson v. Coyn*, No. 3:17-CV-P61-DJH, 2017 WL 2389400, at *1, *3 (W.D. Ky. June 1, 2017) (holding that claims regarding a cell which "was dirty with food on the wall, 'pee' on the floor and mat, dried blood on the mat and a dirty sink" did not state a constitutional violation).

be so unsanitary as to harm him. *See id.* 491 F. App'x at 560 (distinguishing overcrowding described in *Brown v. Plata*, 563 U.S. 493, 520–21 (2011)); *Brown*, 2022 WL 3355805, at *6–7.

### 2. Official-capacity claim

Plaintiff's official-capacity claim against Clark is considered a claim against the entity that employs him: Jefferson County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (§ 1983 suit against county clerk of courts in his official capacity was same as suing clerk's employer, the county); *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

The Supreme Court has recognized that a municipal government is not automatically liable for "an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. *See also id.* at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.") (emphasis in original); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (no vicarious liability for constitutional violations committed by city employees).

Instead, the municipality may be held liable only if the government itself is responsible for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees. *Monell*, 436 U.S. at 694 (indicating that "the government as an entity is responsible under § 1983" only "when execution of a government's policy or custom . . . inflicts the injury"). Congress did not render municipalities liable, in other words, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691.

Proving this requires a plaintiff to "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). Here, Plaintiff identifies no custom or policy responsible for the alleged constitutional deprivation: he hasn't alleged that "unsanitary

dorm, overcrowded with sick inmates" or the denial of his requests for cleaning chemicals were caused by "a custom or policy of" the municipality. *Henning v. Madison Cnty.*, No. 20-5230, 2020 WL 8678009, at *2 (6th Cir. Sept. 3, 2020). Plaintiff's claim against Defendant Clark in his official capacity thus fails to state a claim upon which relief may be granted.

\* \* \*

Under Federal Rule of Civil Procedure 15(a), "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). If the Plaintiff can in good faith allege more facts showing Clark deliberately or recklessly rejected precautions that would've better protected inmates from a risk that was or should've been known, or if he can plausibly allege a policy or custom that caused the alleged constitutional violation, Plaintiff may file an amended complaint setting forth those allegations within 30 days.

### B. Multiple first-shift officers

Although not named as Defendants, Plaintiff complains that "multiple officers on first shift" responded to his request for cleaning chemicals in an "unprofessional" manner, "telling the dorm that it will get pas[sed] out this week with a[n] aggressive attitude for no reason."

The Court holds that it is not necessary to allow Plaintiff to file an amended complaint to name these first-shift officers as Defendants because to do so would be futile. *See Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) ("Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, *LaFountain v. Harry*, 716 F.3d [at] 951 . . ., and leave to amend should be denied if the amendment would be futile."). "Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v.*

7

*Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012); *see Anderson v. Worthington*, No. 0:18-115-HRW, 2020 WL 966580, at *8 (E.D. Ky. Feb. 27, 2020) (plaintiff's claim that he was told "to pack his things in an 'aggressive way'" did not allege a constitutional violation); "Though defendants'[] claimed remarks and behavior may be rude and unprofessional, they are not unconstitutional. . . . Defendants' caustic comments do not infringe on plaintiff's rights." *Williamson v. Tenn. Dep't of Corr.*, No. 2:08-CV-15, 2009 WL 1616998, at *3 (E.D. Tenn. June 9, 2009). Therefore, any claims against the first-shift officers would be subject to dismissal for failure to state a claim upon which relief may be granted. This should not, of course, be construed as an endorsement or minimization of the alleged treatment—only that the Constitution is limited in what it polices in the prison context.

## IV. CONCLUSION AND ORDER

For the foregoing reasons,

The Court **DISMISSES** Plaintiff's claims against Defendant Clark for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

The Court **ORDERS** that **within 30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint to allege facts to show that Clark deliberately or recklessly rejected Covid-protection measures or that a policy/custom caused the alleged constitutional violation.

The Courts instructs the Clerk to place this case number and "Amended" on a § 1983 complaint form and send it to Plaintiff for his use should he wish to file an amended complaint.

Date:

cc:    Plaintiff, *pro se*
       Defendant

Jefferson County Attorney
B213.009

*Benjamin Beaton, District Judge*
United States District Court

November 14, 2022